Faty ANSOUMANA, Jacques Legrand Ngouvi, Lassana Diarra, Moussa Soumahoro, Mamadou Camara, Justin Obiang, Issa Diabate, Sidy Soukona, Dramane Zoungrana, Individually, and on behalf of all others similarly situated as Class Representatives, Plaintiffs,

v.

GRISTEDE'S OPERATING CORP.; Great Atlantic and Pacific Tea Company, Inc., d/b/a A & P; Shopwell, Inc., d/b/a Food Emporium; Duane Reade, Inc.; Charlie Bauer, individually, and d/b/a B & B Delivery Service a/k/a Citi Express; Scott Weinstein and Steven Pilavin, individually and d/b/a Hudson Delivery Service, Inc.; Chelsea Trucking, Inc., a/k/a Hudson York, Defendants.

No. 00 Civ. 253(AKH).

United States District Court, S.D. New York.

May 24, 2001.

Catherine K. Ruckelshaus, James Williams and Laurence E. Norton, II, National Employment Law Project, New York City, Adam T. Klein and Scott Moss, Outten & Golden LLP, New York City, for Plaintiffs.

Randy M. Mastro, Lawrence J. La Sala, and Andrew Rotstein, Gibson, Dunn & Crutcher LLP, New York City, for Gristede's Operating Corp.

David G. Januszewski and Cathy Smith, Cahill Gordon & Reindel, New York City, for Great Atlantic and Pacific Tea Company, Inc., d.b.a. A & P, and Shopwell, Inc., d.b.a. Food Emporium.

Daniel F. Murphy, Jr., James E. McGrath, III, Larissa A. Cason, and Alexander Tchernovitz, Putney, Twombly, Hall & Hirson, LLP, New York City, for Duane Reade, Inc.

Stephen D. Hans, Stephen D. Hans & Associates, P.C., Rego Park, NY, for Charlie Bauer, individually, and d.b.a. B & B Delivery Service a.k.a. Citi Express.

Martin Gringer, Franklin Gringer & Lipp, P.C., Garden City, NY, for Scott Weinstein and Steven Pilavin, individually, and d.b.a. Hudson Delivery Service, Inc., and Chelsea Trucking, Inc., a.k.a. Hudson York.

Mary Hughes, Assistant Attorney General, for Eliot Spitzer, Attorney General of the State of New York, Amicus Curiae.

### MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

HELLERSTEIN, District Judge.

Plaintiffs are unskilled workers who were assigned by labor agents to stores of supermarket and drugstore chains in New York City, to deliver products from those stores to retail customers according to the instructions of supervisors in the stores. The supermarket and drugstore chains considered the Plaintiffs independent contractors, not employees, and the labor agents who gathered and assigned them also considered them independent contractors. In consequence, Plaintiffs allege, they were not paid minimum wages or overtime, and they were not provided with other benefits guaranteed to employees by federal and state laws.

Plaintiffs sue under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, and under the New York Minimum Wage Act, N.Y. Lab. L. §§ 650 et seq., to recover unpaid compensation guaranteed by those laws and to enjoin further violations. Section 216(b) of the FLSA allows individuals to become parties to a collective action under the FLSA by filing consents. Approximately 350 delivery workers have filed such consents. Plaintiffs also sue under the Minimum Wage Act for themselves and on behalf of a class of similarly situated delivery work-

ers, and have filed a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure in order to pursue their state-law claims.

The overall question presented is whether a plaintiff class should be certified. Three principal issues are implicated. First, does the proposed class satisfy the requirements of Rule 23(a) and (b)? Second, may this Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the state law claims of proposed class members who have joined the federal collective action? Third, may this Court exercise supplemental jurisdiction over individuals who are not part of the federal collective action, but who belong to the proposed class?

For the reasons discussed below, I grant Plaintiffs' motion for class certification. I hold that the criteria of Rule 23, and the conditions favoring supplemental jurisdiction, are satisfied. This opinion constitutes my findings of fact and conclusions of law.

## FACTS

The Plaintiffs are unskilled immigrants who have been working as delivery workers, delivering to customers of New York City supermarket and drugstore chains. The Plaintiffs claim to have worked 60 to 84 hours per week, six or seven days each week, and to have been paid only one to two dollars per hour without overtime compensation. Plaintiffs state causes of action under the Fair Labor Standards Act and the New York State Minimum Wage Act.

The Defendants fall into two groups:

1. The users of Plaintiffs' services: Defendants Great Atlantic and Pacific Tea Company, Inc., d/b/a A & P; Shopwell, Inc., d/b/a Food Emporium; Gristede's Operating Corp.; and Duane Reade, Inc.;

2. The labor agents: Charlie Bauer, individually and d/b/a B & B Delivery Service a/k/a Citi Express; Scott Weinstein and Steven Pilavin, individually and d/b/a Hudson Delivery Service, Inc.; and Chelsea Trucking, Inc. a/k/a Hudson York. These Defendants gathered Plaintiffs and directed them to work at stores owned and operated by the other Defendants.

The complaint, filed January 13, 2000, alleges that Defendants violated state and federal labor laws through the misclassification of the Plaintiffs as independent contractors. Plaintiffs allege that the stores to which they were assigned routinely set their schedules, managed their pay, and supervised their work. Plaintiffs allege that they lack specialized skills, education and training, and that they provided no resources or capital investment to the enterprises to which they had been assigned. Their work, they allege, was performed on-site, at Defendants' stores, and they should have been considered employees of such stores.

The Fair Labor Standards Act, 29 U.S.C. § 216(b), provides that "[n]o employee shall be a party plaintiff to [an action brought under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." This opt-in requirement thus restricts the right of recovery under the federal law to those who affirmatively file consents to participate in the suit. At the time of argument, approximately 350 Plaintiffs had filed consents. The federal action thus is a collective action under Section 216(b) of the FLSA, not a class action brought under Rule 23, Fed.R.Civ.P.[1]

There is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the New York Minimum Wage Act, N.Y. Lab. L. § 650 *et seq.* Accordingly, Plaintiffs seek class certification under Rule

---

1. The consent procedures of 29 U.S.C. § 216(b) provide for a collective action, not a class action. Although cases frequently make loose reference to certifying such collective actions, *see, e.g., Foster v. The Food Emporium*, 2000 WL 1737858, at *1 (S.D.N.Y. April 26, 2000); *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 263 (S.D.N.Y.1997), neither the Federal Rules nor the FLSA requires

that a motion for certification be made. Nevertheless, a district judge should be concerned about fair notice and other protections for parties who are not directly before the court. *See, e.g., Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (district court has discretion to regulate notices to those wishing to file FLSA consents).

23 with respect to their state law Minimum Wage Act claims. The class they propose would include those persons who were assigned by the Defendant labor agents to the Defendant supermarket and drugstore chains, who worked for such chains as delivery persons and/or dispatchers after January 13, 1994,[2] and who were not paid minimum wages or overtime premium pay, or spread-of-hours compensation, from Defendants in violation of the New York Minimum Wage Act.

Plaintiffs' motion for class certification was filed August 31, 2000. By stipulation and order filed September 18, 2000, I adjourned the opposition and reply deadlines to allow the parties to conduct discovery relevant to class certification. Following such discovery, opposition and reply briefs were filed, and the New York State Attorney General submitted an *amicus curiae* brief. Also, on November 28, 2000, Defendants A & P and Food Emporium ("A & P") served Plaintiffs with an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure, proposing a settlement of the case as against those Defendants. The Rule 68 offer was conditioned upon certification of a class. On December 7, 2000, Plaintiffs filed an Acceptance of the Rule 68 Offer of Judgment, attaching a proposed order of judgment for my endorsement. By order dated December 11, 2000, I declined to endorse the order of judgment, ruling that it was inappropriate for me to consider the fairness of the proposed settlement until after a class was certified and class members had an opportunity to object.

### RULE 23 CLASS CERTIFICATION CRITERIA

■ The Plaintiffs bear the burden of proof with respect to a motion for class certification. The first step requires the Plaintiffs to show that the four criteria of Federal Rule of Civil Procedure 23(a) are satisfied: numerosity of plaintiffs, commonality of issues, typicality of parties, and adequacy of representation. Once the 23(a) criteria are

established, the Plaintiffs must then demonstrate that they are entitled to certification in at least one of the 23(b) categories. "When considering a motion for class certification, courts should consider the allegations in the complaint as true." *Hirschfeld v. Stone,* 193 F.R.D. 175, 182 (S.D.N.Y.2000) (*citing Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978)). However, a court may consider material beyond the pleadings in determining whether to certify a class. *Daniels v. City of New York,* 198 F.R.D. 409, 413 n. 5 (S.D.N.Y. 2001). Lastly, "[i]n deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class." *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir. 1999), *cert. denied,* 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000).

As I ruled at argument, this case presents essentially a claim for damages that must satisfy the requirements of Rules 23(a) and (b)(3), not (b)(2); the criteria provided by these rules are satisfied; and a class action proceeding in a single court presents the best means of resolving this dispute with efficiency and the greatest potential for a fair and final resolution for all parties involved.

### Numerosity

■ Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995).

Plaintiffs estimate an eventual total class size of 1,000. Of this number, approximately 345 have opted to join the federal collective action as Plaintiffs, and presumably would not opt out of a state law class that would present an opportunity for a possibly larger recovery under state law. These numbers satisfy the numerosity requirement of Rule 23(a)(1). I also find it fair to consider that

**2.** The Complaint defines the class period as ending on the date of entry of judgment. Plaintiffs' motion for class certification, however, specifies an end date of January 13, 2000, the day the Complaint was filed. In my discretion, and in the interests of fairness and efficiency of case management, I fix the end date of the class period as the date of this decision.

the members of this group would not be likely to file individual suits. Their lack of adequate financial resources or access to lawyers, their fear of reprisals (especially in relation to the immigrant status of many), the transient nature of their work, and other similar factors suggest that individual suits as an alternative to a class action are not practical. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993) (the standard is "impracticable," not "impossible").

Defendants' arguments that the proposed class is insufficiently numerous to satisfy this requirement rest primarily on their argument that the potential Plaintiffs can be identified, and that individualized determinations of liability and damages will predominate over the common issues of law and fact. However, at this stage, I must accept the allegations of the complaint as true. *See Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978). It is clear from the complaint that individualized questions concerning the number of hours worked, overtime, etc., will not predominate over the larger question of the case, and, as such, Defendants have failed to demonstrate that the proposed class is insufficiently numerous to warrant class action status.

### Commonality

■ The second requirement of Rule 23(a) is that class members share in common "questions of law or fact." "[A] single common question may be sufficient to satisfy this rule." *Marisol A. ex rel. Forbes v. Giuliani*, 929 F.Supp. 662, 690 (S.D.N.Y.1996), *aff'd*, 126 F.3d 372 (2d Cir.1997).

Plaintiffs allege that there is substantial commonality among themselves. During the relevant period, each Plaintiff worked at the Defendant stores providing low-skill delivery services that were integrated into the stores' businesses; each was engaged and placed by the Defendant labor agents; and each allegedly received pay below minimum wage, without any overtime or spread-of-hours pay.[3] The central issue posed by the case is whether the Plaintiffs were employees or independent contractors, and the consequences of the resolution of that issue in relation to minimum wage, overtime, spread-of-hours, obligations of record maintenance, and like issues. Common questions of law and fact predominate. The differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found. "It is well-established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit." *In re AM Int'l, Inc. Securities Litigation*, 108 F.R.D. 190, 196 (S.D.N.Y.1985).

I thus find that Plaintiffs have carried their burden of demonstrating common issues of law and fact shared by the class as a whole.

### Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability ... When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.

*Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993) (citations omitted). *See also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir.1986) (typicality requirement satisfied by evidence indicating that employer discriminated *in same general fashion*

---

**3.** Overtime is premium pay for hours worked additional to a specified maximum. Spread-of-hours pay is premium pay for hours worked before the normal starting time, or after the normal ending time, of a workday.

against class representatives and other members of class). "A difference in damages arising from a disparity in injuries among the plaintiff class does not preclude typicality." *Duprey v. Connecticut Dep't of Motor Vehicles,* 191 F.R.D. 329, 337 (D.Conn.2000).

Plaintiffs contend that all of the class members, including the proposed representatives, experienced the same working conditions and therefore have the same claims. They all worked at the Defendant stores; they all were hired and placed by the Defendant labor agents; and they all were paid below minimum wage and denied overtime pay.

Defendants argue that the elements of each individual's claims vary considerably. Some Plaintiffs were required to perform tasks other than deliveries, while some Plaintiffs were not. One of the named Plaintiffs, Mamadou Camara, was a "dispatcher," not a delivery person. Plaintiffs worked different hours at different locations for different employers, during different periods of time and for different levels of compensation. Therefore, Defendants argue, the claims of the named Plaintiffs cannot be "typical" of those of all class members.

Again, it bears emphasizing that the differences cited by the Defendants do not undermine the central, specific claim presented by the Plaintiffs as a group. Differences concerning for whom any particular Plaintiff worked, or for what particular number of hours, cannot undermine the conclusion that each putative class member's claims arise from the same course of events and each class member will make a similar legal argument to demonstrate liability. Accordingly, I conclude that the named representatives' claims are sufficiently typical of those of the proposed class as a whole.

### Adequacy

■ Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." To demonstrate satisfactorily the requirement of adequacy, the movant must demonstrate that " 'class counsel is qualified, experienced, and generally able to conduct the litigation.' Plaintiffs must also demonstrate

that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." *Marisol A. ex rel. Forbes v. Giuliani,* 126 F.3d 372, 378 (2d Cir.1997). Under the conflict of interest inquiry, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney,* 181 F.R.D. 243, 259 (S.D.N.Y.1998) (citation omitted).

Plaintiffs' counsel, Adam Klein and Scott Moss of Outten & Golden LLP and Catherine K. Ruckelshaus, James Williams and Laurence E. Norton, II of the National Employment Law Project, are experienced and well-qualified in the fields of labor law and class litigation and, in particular, wage-and-hour class litigation. With respect to potential conflicts between the proposed named Plaintiffs and the class members, given the commonality and typicality of claims among the Plaintiffs, *see supra,* I find that there are no antagonistic interests that bear directly upon the subject matter of the litigation.

Defendants' arguments that the named Plaintiffs' interests conflict with those of other potential class members are unsupported. Because this is a suit primarily for money damages stemming from past actions, it is not relevant that only one of the named Plaintiffs is still employed as a delivery person. Further concerns raised by the Defendants concerning the liquidated damages aspect of the state law involved in this case are irrelevant for the reasons discussed later in this opinion. Finally, Defendants' concerns regarding the immigration status of the various named Plaintiffs as bearing on their potential credibility and fitness as class representatives are without merit, and I find no infirmity with respect to the adequacy of counsel or the named Plaintiffs as representatives of this putative class.

### Rule 23(b)(2) Requirements

■ Plaintiffs seek certification under Rule 23(b)(2), alleging that Defendants have "acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as

a whole." Fed.R.Civ.P. 23(b)(2). Plaintiffs argue that class certification under Rule 23(b)(2) is common for employment class actions, and that back pay can be awarded incidental to injunctive and declaratory relief. *See, e.g., Martens v. Smith Barney,* 181 F.R.D. 243, 260 (S.D.N.Y.1998). The consequence of Plaintiffs' argument is that they could avoid the individualized notice requirements provided in Rule 23(c) for a Rule 23(b)(3) class.

In this case, however, the recovery of individualized damages will predominate, and "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," is required. *See* Fed. R.Civ.P. 23(c)(2); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968) ("[s]ubsection (b)(2) was never intended to cover cases ... where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory."); *see also Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 413 (5th Cir.1998); *Parker v. Time Warner Entertainment Co.,* 198 F.R.D. 374 (E.D.N.Y. 2001); *Robinson v. Metro–North Commuter Railroad Co.,* 197 F.R.D. 85 (S.D.N.Y.2000). Plaintiffs want monetary compensation, to the extent they were not paid minimum wage and overtime. This is not a Rule 23(b)(2) class.

Certifying a Rule 23(b)(3) class is appropriate for an additional reason: to allow members to be fully advised of their rights and options in a notice approved by the court, and thereafter to opt-out of the class. The interplay of the Minimum Wage Act and the Civil Practice Law and Rules makes this procedure important. Those aggrieved by a willful violation of the New York Minimum Wage Act may recover liquidated damages equivalent to twenty-five per cent of unpaid wages found to be due them. N.Y. Lab. L. §§ 198, subd. 1–a, 663. However, they can-

not do so as part of a class action. *See* N.Y.C.P.L.R. 901(b).[4] Hence, those affected must be given an option: to gain the convenience of class membership, or opting-out and suing individually.[5] *See Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351, 353 (S.D.N.Y.1999) (*citing Pesantez v. Boyle Envtl. Servs., Inc.,* 251 A.D.2d 11, 11 (1st Dept.1998) ("To the extent certain individuals may wish to pursue punitive claims pursuant to Labor Law § 198(1–a), which cannot be maintained in a class action (CPLR 901[b] ), they may opt out of the class action ....") (citations omitted)). Although some courts have certified classes under Rule 23(b)(2) and have preserved opt-out rights for individuals at a later date, *see, e.g., Martens v. Smith Barney,* 181 F.R.D. 243, 260 (S.D.N.Y.1998), for example, between the liability stage and the damages stage, *see, e.g., Holmes v. Continental Can Co.,* 706 F.2d 1144, 1155, 1157 (11th Cir.1983), I believe that such a bifurcated procedure complicates a class action, affects due process rights, and increases problems of manageability. I decline to follow that procedure in this case.

### *Rule 23(b)(3) Requirements: Predominance of Common Questions and Superiority of Class Action over Alternatives*

■ Plaintiffs seek certification under Rule 23(b)(3) if they fail to qualify under Rule 23(b)(2). I grant Plaintiffs' motion. Accordingly, Plaintiffs will be required to direct to the members of the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2).

Rule 23(b)(3) requires plaintiffs to demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the

4. CPLR 901(b) provides that "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."

5. Defendants argue that New York State law bars class actions on state wage claims seeking liquidated damages. The Defendants' contentions are treated in a later section, discussing whether the state law claims at issue here raise novel or complex issues of state law.

fair and efficient adjudication of the controversy." The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2). If common issues do not predominate over individual factual issues, a class action is "not a superior method for fair and efficient adjudication." *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 72 (E.D.N.Y.2000).

As I ruled previously, Plaintiffs each raise the same underlying, contested issue: whether the Defendant stores, in contravention of applicable federal and state labor law, should have treated the Plaintiffs as employees, rather than independent contractors. The same issue applies to the Defendants who were the labor agents. This single issue predominates over all other factual and legal issues presented, because each proposed Plaintiff class member did substantially the same type of work, for the same type of employer, and was assigned in the same sort of way, during the relevant time period. Accordingly, I find that common issues predominate over individual issues.

■ I find also that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). The collective action involves approximately 345 present and former deliverymen for Gristede's, Food Emporium, A & P, and Duane Reade who have filed consents to join the Plaintiffs who originally filed this lawsuit. Section 216(b) of Title 29, United States Code, provides for this procedure, but does not instruct the district judge how and to what extent those filing consents may participate and control the litigation and be bound by any settlement or trial, or what kinds of notice, if any, they are entitled to receive. However, the tasks that I will have to perform in order to manage these parties and their claims are essentially the same as those required for class actions generally, and considerable guidance exists in the developed jurisprudence for class actions under Rule 23. As with members of a Rule 23 class, district judges must oversee the fairness and sufficiency of notice to those who have become parties by their filed consents. The district judge must be assured that counsel are competent and responsive to all for whom they act, that there be no discrimination among the parties, that settlements be fair and that all have equal opportunity to benefit therefrom. The protections of Rule 23, although directed to class actions, can be easily adapted to the management of a collective action under section 216(b) of the FLSA. Federal Rule of Civil Procedure 16, providing for the "just, speedy, and inexpensive disposition" of all civil cases before a district court, gives me ample discretion to supervise these proceedings and to take wisdom from the entire body of Civil Procedure, including Rule 23, to accomplish those goals.

With these considerations in mind, it is clear to me that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest by individual members to bring and prosecute separate actions. These common questions are best litigated in a single forum, and the proceedings already undertaken cause any separate actions in this and other forums to be wasteful and inefficient. Finally, the difficulties likely to be encountered in the management of the class portion of this action are not likely to be different or greater than in the management of the collective portion of this action. Thus, the specific considerations set out in Rule 23(b)(3)(A) through (D) are satisfied and class certification is warranted.

### SUBJECT MATTER JURISDICTION

■ Having decided that common questions of law and fact predominate among the members of the class, that my management of the class action of the Minimum Wage Act claims is consistent with my management of the collective action of the FLSA claims, and that there is a substantial judicial interest to avoid additional and unnecessary lawsuits of similar issues in other state and federal courts, I must now decide whether I have jurisdiction to hear the Plaintiffs' state law claims. The issue is one of supplemental jurisdiction: whether the claims under the FLSA and under the Minimum Wage Act are "so related ... that they form part of the

same case or controversy under Article III of the United States Constitution;" 28 U.S.C. § 1367(a);[6] whether, that is, they form "a common nucleus of operative fact' " and "would ordinarily be tried in one judicial proceeding." *MMT Sales, Inc. v. Channel 53 Inc.*, 1993 WL 541242 (S.D.N.Y. Dec. 27, 1993) (*quoting Promisel v. First American Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir.1991) (*citing United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966))). District courts traditionally have exercised this discretion in favor of supplemental jurisdiction where, as here, "considerations of judicial economy, convenience and fairness to litigants" weigh in favor of hearing the state law claims at the same time as the federal law claims. *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130.

My jurisdictional analysis must treat two distinct categories of actual and potential plaintiffs in the case before me: those individuals who have stated federal claims, either by originally filing the action or by filing consents, and those individuals who have only state claims. A basic argument made by Defendants is that the longer period of limitations under New York's Minimum Wage Act (six years, compared to two year under the FLSA (three years for wilful violations), *compare* N.Y. Lab. L. §§ 198, subd. 3, 663, subd. 3 *with* 29 U.S.C. § 255(a)) would cause the state law claims to predominate over the federal claims, and that I should therefore exercise my discretion to dismiss the state claims and allow them to be filed in the New York courts. *See* 28 U.S.C. § 1367(c); *Perez v. Ortiz*, 849 F.2d 793, 798 (2d Cir.1988).[7]

Defendants' argument of predominance is not persuasive. If Plaintiffs are able to show that they were employees, not independent contractors, during their most recent two years of employment, they probably will prevail as well for earlier years. Similarly, if Plaintiffs fail in their proofs as to the last two years, they are likely to fail as well for the earlier years. The essential facts and issues are likely to be the same, and pre-trial proceedings are not likely to be materially more burdensome, nor is it likely that a trial will be materially prolonged, if supplemental jurisdiction is exercised over the related Minimum Wage Act claims. The existence of a longer statute of limitations in a related state claim is not a unique phenomenon, and district courts commonly exercise supplemental jurisdiction in such circumstances. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995) (supplemental claim jurisdiction in similar federal and state employment discrimination cases, with longer state limitations), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The same considerations of sound jurisdictional efficiency and economy should apply to the delivery workers who filed consents to be party-plaintiffs to the FLSA claims. Section 216(b) gives them the status of parties and, as parties, they should have the same rights as the named Plaintiffs to have all their related claims adjudicated in the same forum. Plaintiffs properly chose a federal forum to vindicate their federal rights to be paid a minimum wage and overtime premium pay. Their suit will not be undermined or compromised by including their related claims under New York's Minimum Wage Act. Nor will Defendants' claims, defenses or proofs significantly vary. The Minimum Wage Act claims will not predominate over the FLSA claims.

---

**6.** Section 1367(a) provides:

   [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form the same case or controversy under Article III of the United States Constitution....

**7.** Section 1367(c), enacted in 1990 and codifying numerous cases, provides the grounds for declining to exercise supplemental jurisdiction. It provides that a district court may decline to exercise supplemental jurisdiction over a claim if:

   (1) the Claim raises a novel or complex issue of State law,
   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
   (3) the district court has dismissed all claims over which it has original jurisdiction, or
   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plaintiffs' motion to certify a class pursuant to Federal Rule of Civil Procedure 23 should be governed by the same considerations. Rule 23 was developed to provide an efficient procedural device to resolve common claims belonging to a large number of similarly situated people. Rather than have their claims brought in different courts and in a multiplicity of proceedings, or not brought at all because of the expense and burden on each individual litigant, the class action device was developed as a fairer and more efficient procedure for presenting and resolving similar claims. *General Tel. Co. of SW v. Falcon,* 457 U.S. 147, 159, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 329, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The Plaintiffs in this case propose to utilize this procedural device for the more efficient resolution of their supplemental claims.

Plaintiffs seek by this lawsuit to vindicate the rights of all delivery workers whom the labor agent Defendants assigned to the supermarket and drugstore chain Defendants: those who have filed consents to join the FLSA claims, or who may do so in response to the notice that is to be sent to the class; and those who may wish to take advantage of the longer period for recovery under the New York Minimum Wage Act. As I have held in my previous discussion, the common federal and state issues predominate, and the class action device is superior to the alternatives of numerous actions in a number of courts, or a loss of guaranteed rights because many Plaintiffs will not have the ability or means to file individual suits. This case presents the ideal factual scenario supporting the exercise of supplemental jurisdiction.

A district court's Article III jurisdiction over cases and controversies arising under the laws or constitution of the United States has traditionally embraced related state issues and claims. *Osborn v. Bank of the United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). As Chief Justice Marshall ruled, jurisdiction exists over a "case," not merely a claim, and if, in a case "arising under" the laws or constitution of the United States, other questions are presented that

may not be dependent upon the construction of federal law, the federal courts are nevertheless empowered to rule upon them.

"[w]hen a question to which the judicial power of the Union is extended by the Constitution forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts jurisdiction of that cause, although other questions of fact or law may be involved in it."

*Id.* 22 U.S. at 823.

*United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), provided the modem formulation of this doctrine of pendent jurisdiction. The issue in *Gibbs* was whether a claim under the common law of Tennessee could be joined to a claim under the federal Labor Management Relations Act, in a lawsuit against a labor union. The Supreme Court held that because the "state and federal claims [ ] derive from a common nucleus of operative fact ... such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding," pendent jurisdiction could be exercised over the state claim as well as the federal claim. *Id.* at 725, 86 S.Ct. 1130. Judicial power exists, the Supreme Court held, whenever "the relationship between [the federal law] claim and the state law claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Id.* at 725, 86 S.Ct. 1130. *Gibbs* established a three-part test: the federal claim must confer subject matter jurisdiction, the federal and the state law claims must derive from a common nucleus of operative fact, and the claims must be such that the plaintiff would ordinarily be expected to try them together in one proceeding.

But there were limits to the doctrine, based on interpretations of what Congress had intended in conferring jurisdiction on the district courts. Where, for example, Congress provided that certain parties are not subject to suit under federal law except under specified conditions, the conditions cannot be circumvented by joining a related state cause of action. *See e.g., Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (because an individual is unable to sue county under 42 U.S.C. § 1983

for constitutional violations perpetrated by county officials, no federal supplemental jurisdiction exists over related state causes of action against county). *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), presented another example: where, in an action founded on state law, plaintiff sues only one of two defendants in a federal court because he lacks diversity jurisdiction over the other, and the defendant-party brings in the other as a third-party defendant pursuant to Federal Rule of Civil Procedure Rule 14, plaintiff still may not sue the non-diverse party. Rule 14, the Supreme Court held, is not a basis of jurisdiction, even though it provides that a plaintiff may file a complaint against an impleaded third party arising from a related transaction or occurrence.

*Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), extended this rule against pendent-party jurisdiction to cases where Congress provided for exclusive federal jurisdiction. In such a case, where a federal statute provided that federal jurisdiction was exclusive to the district courts, there was to be no jurisdiction over a related state law claim brought against a non-diverse pendent-party-defendant. The Supreme Court refused to "assume that the full constitutional power has been congressionally authorized" with respect to pendent parties, and held that only an express congressional grant of authority would support the exercise of pendent party jurisdiction. *Id.* at 549, 109 S.Ct. 2003. The Court invited a Congressional remedy: "[w]hatever we say regarding the scope of jurisdiction ... can of course be changed by Congress." *Id.* at 556, 109 S.Ct. 2003. *See Lindsay v. Kvortek,* 865 F.Supp. 264, 272 (W.D.Pa.1994) (commenting on unduly harsh result, and noting that, post-*Finley,* "no pendent party jurisdiction could be asserted unless Congress clearly provided for it").

Congress accepted the Supreme Court's invitation and, in 1990, enacted 28 U.S.C. § 1367 to loosen the restrictions of *Finley. See* Judicial Improvements Act of 1990, Public Law 101–650, 104 Stat. 5089; 28 U.S.C. § 1367; Fallon, Meltzer and Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 970 (4th ed.1996). A report issued by the Federal Courts Study Committee, organized pursuant to an earlier Congressional enactment, *see* Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100–702, § 102(2), 102 Stat. 4642, 4644 (1988), recommended that federal courts be authorized "to exercise pendent jurisdiction over parties without an independent federal jurisdictional basis." Federal Courts Study Committee Report 47. Congress accepted the Committee's recommendation in enacting section 1367. *See* H.R.Rep. No. 734, 101st Cong., 2d Sess. 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 ("[i]n providing for supplemental jurisdiction over claims involving the addition of parties, subsection (a) explicitly fills the statutory gap noted in *Finley v. United States"*); 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3567.2 (Supp.2000) (A primary purpose of the statute is "to make it clear that in federal-question cases pendent-party jurisdiction is permissible."); § 3523 (Supp.1994) ("In the Judicial Improvements Act of 1990, Congress explicitly granted pendent party jurisdiction to the district courts.").

As long as a district court has original jurisdiction over a civil action, Section 1367 provides, subject to exceptions in the Act and in other federal statutes, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Further, Congress provided, supplemental jurisdiction was to "include claims that involve the joinder or intervention of additional parties," in effect over-ruling the limitation formulated by the Supreme Court ruling in *Finley v. United States.*

Congress intended that Section 1367 codify "the scope of supplemental jurisdiction first articulated by the Supreme Court in *United Mine Workers v. Gibbs,"* that is, supplemental jurisdiction to the constitutional limit. *See* H.R.Rep. No. 734, 101st Cong., 2d Sess. 29 n. 15, 1990 U.S.C.C.A.N. at 6875. Commentators have noted that Congressional ex-

pression with approval. *See* Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis*, 24 Ariz. ST. L.J. 849, 856–57 (1992); David D. Siegel, *Developments in Federal Jurisdiction and Practice*, 540 PLI/Lit 7, *51 (1996). As Justice Scalia noted in *Finley*, "the full constitutional power" was exercised "for pendent-claim jurisdiction" but not, he held, for "pendent-party jurisdiction," even though, he assumed, "the constitutional criterion for pendent-party jurisdiction is analogous." *Finley*, 490 U.S. at 549, 109 S.Ct. 2003. With the enactment of Section 1367, Congress eliminated the pendent-party restriction established in *Finley*. Henceforth, except as provided in subsections (b) and (c) of Section 1367, the broad test of *United Mine Workers v. Gibbs* for supplemental-claim jurisdiction would apply as well to supplemental-party jurisdiction.

In the case before me, as I have ruled already, the federal FLSA claims and the state Minimum Wage Act claims arise from the same nucleus of operative facts, are substantially related to each other, and naturally would be treated as one case and controversy. Indeed, it would be difficult to try them separately, for the findings in one case would tend to be preclusive as to the other or, if not preclusive, could expose the parties to inconsistent results. *See* Fallon, Meltzer and Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 967 (4th ed.1996). The test of relatedness under Section 1367 is satisfied, and the federal FLSA claim confers supplemental jurisdiction over the Minimum Wage Act claim.

Subsections (b) and (c) of Section 1367 provide exceptions to supplemental jurisdiction. Subsection (b) provides that in an action where the court's original jurisdiction "is founded solely on Section 1332 of this title," that is, on grounds solely of diverse or foreign citizenship, the district courts are not to have supplemental jurisdiction over—

claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over

claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.[8]

These exceptions apply by their terms only to cases where the court's jurisdiction is founded "solely" on diverse or foreign citizenship. *See* 28 U.S.C. § 1332. The exceptions are not applicable in the case before me, which is founded on federal question jurisdiction—28 U.S.C. § 1331.

Defendants ask me, nevertheless, to apply this restrictive category of exception not only to Section 1332 cases founded on diversity, but also to Section 1331 cases involving substantial federal questions. Defendants argue that supplemental jurisdiction should extend to pendent parties who are sued as defendants, and not to pendent parties who may seek to join as plaintiffs. Thus, Defendants argue, I do not have jurisdiction over the class action, since some of its members may not have a substantial federal claim of their own that is not time-barred.

Defendants' argument focuses on a sentence in the Report of the Federal Courts Study Committee, recommending to Congress that it extend federal jurisdiction over claims arising out of the same transaction or occurrence "that require the joinder of additional parties, namely defendants against whom that plaintiff has a closely related state claim." Committee Report 47–48. Defendants' reading is tortured; there is nothing in the Report to suggest that pendent-party jurisdiction should be limited to pendent-defendant jurisdiction. *See, e.g.,* Denis E. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849, 926 (1992) ("In all cases not founded solely on § 1332, the statute now authorizes full supplemental jurisdiction for all claims involving additional parties, without restriction as to whether the additional party is joined as a

---

**8.** The referenced rules treat third-party practice, necessary joinder and permissive joinder, and intervention, respectively.

'pendent party plaintiff' or 'pendent party defendant.' ").

■ Defendants argue also that every putative class member's claim forms a separate case, and that I therefore have to evaluate, for each member of the class, if that member has a viable federal FLSA claim as to which his Minimum Wage Act may be considered supplemental. In support of this argument, Defendants rely upon *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir.1999). The members of a class, however, are not parties. Without special court orders, they are not subject to counterclaims or discovery. *Fielder* is not the law of this Circuit, and I decline to follow it.

■ Defendants also cite *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), for the proposition that each plaintiff's claim in a proposed diversity-based class action must satisfy the amount in controversy requirement, and that those whose claim is less may not "ride in on another's coattails." Setting aside the lively debate as to whether Section 1367(b) overrules *Zahn, see In re Abbott Lab.*, 51 F.3d 524, 527–29 (5th Cir.1995) (holding that *Zahn* is overruled by the express omission of Rule 23 from the list of federal rules in section 1367(b) as to which supplemental jurisdiction cannot be exercised, when the underlying action is based on diversity of citizenship)—a debate notably excluded from Defendants' discussion—the issues involved in diversity actions are not relevant to this action founded on federal subject matter jurisdiction.[9] The case before me is based on federal subject matter jurisdiction, and there is no minimum dollar threshold for an FLSA case or a Minimum Wage Act case over which I have supplemental jurisdiction. *Zahn,* to whatever degree it remains viable, is not applicable. *Compare Zahn,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), *with Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921) (finding no jurisdictional impairment in the certification of a class action based on diversity where only the named representatives meet the citizenship requirements of the diversity rule). *See* Fallon, Meltzer and Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 1541 (4th ed.1996).

Supplemental jurisdiction is not mandatory. Section 1367(c) provides that the district court "may decline to exercise supplemental jurisdiction" in a number of instances:

(1) if the claim "raises a novel or complex issue of State law"; or

(2) if the state law claim "substantially predominates"; or

(3) if all federal claims have been dismissed; or

(4) if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[10]

■ Defendants argue that I should decline to exercise supplemental jurisdiction because the claims raise novel state law issues. Under New York Labor Law §§ 198, subd. 1–a and 663, plaintiffs may seek liquidated damages of an additional twenty-five percent of the amount due if employers willfully failed to pay minimum wages or overtime. However, New York Civil Practice Law and Rules 901(b) provides that actions for a penalty may not be maintained as a class action unless the authorizing statute so provides. *See, e.g., Carter v. Frito-Lay, Inc.,* 52 N.Y.2d 994, 438 N.Y.S.2d 80, 419 N.E.2d 1079 (1981);

---

9. As discussed previously, section 1367(b) provides that supplemental jurisdiction shall not extend against "persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."

10. My discretion to decline supplemental jurisdiction should be based upon an "enumerated category of subsection 1367(c)." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir.1998); *Executive Software North America, Inc. v. U.S. District Ct.,* 24 F.3d 1545 (9th Cir.1994). Possibly, the criteria of fairness and efficiency discussed in *United Mine Workers v. Gibbs, supra,* may also be available. *See* Fallon, Meltzer and Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 973 (4th ed.1996), and Supp.(1998) at 55.

*Ballard v. Community Home Care Referral Service, Inc.,* 264 A.D.2d 747, 748, 695 N.Y.S.2d 130 (2nd Dept. 1999) ("the fact that the plaintiff's complaint contains a claim for liquidated damages precludes class action relief."); *Caruso v. Allnet Commun. Servs.,* 662 N.Y.S.2d 468, 470 (1st Dept. 1997) (relying on *Carter* ).

Plaintiffs respond by offering to waive any right to recover liquidated damages as a condition of being certified as a class; any who object may opt out of the class. New York law authorizes such a procedure. *See Pesantez v. Boyle Envtl. Servs., Inc.,* 251 A.D.2d 11, 673 N.Y.S.2d 659 (1st Dept.1998) ("to the extent certain individuals may wish to pursue punitive claims pursuant to Labor law § 198(1–a), which cannot be maintained in a class action (CPLR 901[b] ), they may opt out of the class action. . . ."); *Weinberg v. Hertz Corp.,* 116 A.D.2d 1, 6, 499 N.Y.S.2d 693 (1st Dept.1986); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.,* 132 A.D.2d 604, 606, 517 N.Y.S.2d 764 (2d Dept.1987). *Pesantez* overruled *Hauptman v. Helena Rubinstein, Inc.,* 114 Misc.2d 935, 452 N.Y.S.2d 989 (Sup.Ct.N.Y.Co.1981) (waiver tends to undermine class representatives' ability adequately to advance interests of class). *See* 3 Weinstein, Korn & Miller, New York Civil Practice ¶ 901.22 (describing rationale of *Hauptman* as "strained"). *Compare Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351, 353 (S.D.N.Y.1999) (plaintiff satisfies CPLR 901(b) by waiving right to punitive damages), *with Foster v. Food Emporium,* 2000 WL 1737858, at *3 n. 3 (S.D.N.Y. April 26, 2000) (dictum, waiver not a favored procedure). I believe that *Pesantez* states the correct rule, and it is authoritative as the rule of decision to be followed. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). In any event, the Minimum Wage Act claim is neither so "novel or complex" as to suggest that I should decline to exercise supplemental jurisdiction.

Defendants next argue that the state law claims will "substantially predominate" over the FLSA claim. I have already discussed this argument in the context of Rule 23. As my discussion indicates, the state law claims are substantially similar to the federal law claims, and it is likely that they will either succeed or fail together. I do not decline supplemental jurisdiction on this ground.

Defendants next argue that a state-law class will be difficult to manage alongside the collective action under the FLSA. Again, I have previously discussed and rejected that argument in the context of Rule 23, and I reject it as well in the context of whether or not I should, in my discretion, decline to exercise supplemental jurisdiction.

■ Finally, Defendants argue that a jury inevitably will be confused and Defendants will be prejudiced by combining federal and state claims in one lawsuit. *See Zelaya v. J.M. Macias, Inc.,* 999 F.Supp. 778, 783 (E.D.N.C.1998) (supplemental jurisdiction declined where class action of over 100 plaintiffs seeking minimum wage and overtime pay under North Carolina labor laws was thought to conflict with the FLSA claims of a separate, distinct and smaller collective action brought under the FLSA, and would as a result "undoubtedly confuse a jury"). I do not agree with this reasoning. In my judgment, there is little risk of jury confusion, and there is no greater risk than that present in other cases involving supplemental jurisdiction. Here, as in many such cases, state and federal claims are similar and arise from the same operative facts. There is no reason why competent counsel, such as those in the case before me, will lack the ability to present the issues to the jury cogently and understandably, or why federal jurors will not be able to understand the issues that will be presented to them. Nor will any unmanageable problems likely arise in pre-trial proceedings. Competent counsel will be able to draft appropriate notices, and they and the court should be able to manage this case fairly and efficiently. With respect to *Zelaya,* it seems to have enjoyed little resonance, either in earlier, or later, cases, and I decline to follow its reasoning. *See Ramirez v. NutraSweet Co.,* 1996 WL 529413 (N.D.Ill. Sept. 11, 1996); *Krueger v. New York Tel. Co.,* 163 F.R.D. 433 (S.D.N.Y.1995); *Leyva v. Buley,* 125 F.R.D. 512 (E.D.Wa.1989), decided prior to *Zelaya;* and *Ladegaard v. Hard Rock*

*Concrete Cutters, Inc.*, 2000 WL 1774091 (N.D.Ill. Dec. 1, 2000); *In re Albertson's, Inc., Employment Practices Litig.*, MDL Docket No. 1215, CV 97–527–S (Order and Judgment dated September 8, 2000); *Kelley v. SBC, Inc.*, 1998 WL 928302 (N.D.Cal. Nov. 13, 1998), decided after *Zelaya*. There is no good reason why I should decline to exercise supplemental jurisdiction.

Indeed, in contrast to the objections raised by the Defendants, this case demonstrates why supplemental jurisdiction should be exercised. If the related FLSA and Minimum Wage Act claims were to be litigated in parallel fashion, in this court and in the New York Supreme Court, there would be great potential for confusion of issues; considerable unnecessary costs, inefficiency and inconsistency of proceedings and results; and other problems inherent in parallel class action litigation. *See, e.g.*, William W. Schwarzer et al., *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts*, 78 VA. L. REV. 1689 (1992); Paul Beckett, *Companies Still Fear Class–Action Suits*, Wall St. J., Apr. 4, 1997, at B2 (discussing the high costs to companies that result from defending multiple class actions in state and federal courts). The writers note the problems and needless expense of overlapping, uncoordinated discovery; differing rulings by multiple courts with respect to discovery, relevance and privilege; differing and conflicting rulings on issues of both procedure and substance; collateral estoppel issues with respect to interlocutory rulings; and the difficulties of managing joint trials even where multiple courts agree jointly to manage complex litigations. Congress enacted Section 1367 to avoid such problems. Defendants short-sightedly argue to reverse the Congressional wisdom. I decline to do so.

### Conclusion

The Plaintiffs in this case properly selected the federal forum to vindicate federal rights and similar state-law rights. They asserted claims over which this Court has original federal subject matter jurisdiction. They seek to use the Federal Rules of Civil Procedure and the statutes governing jurisdiction to certify a pendent state law class. "[C]on-siderations of judicial economy, convenience and fairness to litigants" support a class action. *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Congress, pursuant to 28 U.S.C. § 1367, has given me the jurisdictional authority over this case, and Rule 23 of the Federal Rules of Civil Procedure has provided the criteria by which I may certify a class to prosecute the case. Were I to decline to exercise the jurisdiction that Congress has given to me, I would significantly prejudice the Plaintiffs who have properly turned to this Court to seek redress of what are alleged to be significant violations of their rights.

Accordingly, I certify a Rule 23(b)(3) class comprised of those persons who worked for Defendants as delivery persons and/or dispatchers at any time after January 13, 1994 to the date of this decision, who are entitled to back wages for unpaid minimum wages, overtime work for which they did not receive overtime premium pay, and/or spread-of-hours compensation from Defendants, in violation of the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 *et seq.*

SO ORDERED.