**John PADILLA, Plaintiff,**

v.

**MAERSK LINE, LTD., Defendant.**

**No. 07 Civ. 3638(RMB)(THK).**

United States District Court,
S.D. New York.

Oct. 26, 2010.

Mitchell S. Sternbach, Rockville Centre, NY, Dennis Michael O'Bryan, Howard Michael Cohen, O'Bryan, Baun, Cohen, Cuebler, Karamanian, Birmingham, MI, Roberta Ellen Ashkin, New York City, for Plaintiff.

John Joseph Walsh, Justin Thomas Nastro, Freehill, Hogan & Mahar, LLP, New York City, for Defendant.

### DECISION & ORDER

RICHARD M. BERMAN, District Judge.

## I. Background

John Padilla ("Padilla" or "Plaintiff") filed a complaint ("Complaint") against his former employer, Maersk Line, Ltd. ("Maersk" or "Defendant"), on behalf of himself and a proposed class of similarly situated seamen, alleging that Plaintiff and the putative class members "suffered illness or injury in the service of Defendant's vessels and were thereafter paid unearned wages *sans* overtime they otherwise would have earned" under the general maritime law for "maintenance." (Compl., dated Apr. 27, 2007, ¶¶ 2–4.) [1]

On December 13, 2007, at a pre-trial conference before United States District Judge Peter K. Leisure, "the parties agreed to have the Court determine [D]efendant's liability for overtime wages as unearned wages prior to addressing whether the action is suitable for class action status." *Padilla v. Maersk Line, Ltd.*, 603 F.Supp.2d 616, 620 (S.D.N.Y.2009). On March 12, 2009, Judge Leisure granted summary judgment for Plaintiff ("Summary Judgment Order"), finding, among other things, that "an injured seaman is entitled to his average overtime earnings in the unearned wage component of his maintenance and cure remedy"; that "the shipping articles [signed by Padilla] do not modify or limit Padilla's entitlement under general maritime law to [such] overtime pay"; and that, because "[t]here [are] no genuine issue[s] of fact as to the amount of overtime that Padilla performed prior to the onset of the injury," "the date of Padilla's discharge," or "the date [Padilla's] voyage ended," "there is no factual dispute as to the computation of damages in this case." *Id.* at 627, 629, 630. On October 29, 2009, United States Magistrate Judge Theodore H. Katz granted a motion to intervene in the action ("Motion to Intervene"), filed September 9, 2009 by Christopher B. Cupan ("Cupan"), another alleged "former recipient of unearned wages from Defendant *sans* overtime." (Motion to Intervene, dated Sept. 9, 2009, at 1); *see Padilla v. Maersk Line. Ltd.*, No. 07 Civ. 3638, 2009 WL 3496877 (S.D.N.Y. Oct. 29, 2009).

Before the Court is Plaintiff's motion, filed June 30, 2010, "to certify a class of at least 347 seamen who were paid unearned wages, maintenance and cure until the end of their voyage or the date of maximum medical improvement, but were not paid overtime wages that they would have otherwise earned in their service aboard Maersk vessels" ("Motion for Class Certification"). (Pl.'s Mem. of Law in Support of Motion for Class Certification, dated June 30, 2010 ("Pl. Class Mem."), at 1–2.) Plaintiff argues that his claims satisfy "the [four] requirements of [Rule] 23(a)" and "the [two] requirements of Rule 23(b)(3)." (Pl. Class Mem. at 3.) Plaintiff attached to his submission, among other things, a list that includes the names of 347 seamen who allegedly also fit this description, the Maersk vessels on which those seamen served, and their dates of service. (*See* Decl. of Dennis M. O'Bryan, dated June 30,

---

1. Although Plaintiff initiated this action against (only) the United States, he amended the Complaint to add Maersk as a defendant on September 13, 2007, and he voluntarily dismissed the United States from the case on October 3, 2007.

2010, Ex. A.) [2] On October 5, 2010, Defendant filed a brief in opposition to Plaintiff's Motion for Class Certification, arguing, among other things, that because "[t]he only issue to be tried in this case at this time is the issue of damages" and such issue "will have to be decided on an individualized basis," "there is n[either] commonality or typicality ... under Rule 23(a)" nor a "predominant significant issue such that [a class action] is a superior method of resolving the controversies" under Rule 23(b)(3). (Def.'s Am. Mem. of Law in Opp'n to Class Cert., dated Oct. 5, 2010 ("Def. Class Opp'n II"), at 5–6, 9, 16.) On October 8, 2010, Plaintiff filed a reply reaffirming its position that "Defendant's argument that this matter should digress into a multitude of individual trials ... flies in the face of the class action objective of avoiding a multiplicity of different rules of law, and allowing for the adjudication of ... nominal claims not worth the time and expense of individual lawsuits." (Pl. Class Reply I at 10–11; *see* Pl.'s Reply to Def. Class Opp'n II, dated Oct. 8, 2010.)

Also before the Court is Defendant's motion, filed September 23, 2009 before Judge Leisure, for entry of final judgment pursuant to Fed.R.Civ.P. 54(b) as to the March 12, 2009 Summary Judgment Order ("Motion for Entry of Judgment"), the grant of which, Defendant argues, "will conserve judicial resources." (Def.'s Mem. of Law in Support of Motion for Entry of Judgment, dated Sept. 22, 2009 ("Def. Entry Mem."), at 2.) Plaintiff opposes the Motion for Entry of Judgment, arguing, among other things, that "Defendant is not entitled to a second bite at the liability apple." (Pl.'s Mem. in Opp'n to Defendant's Motion for Entry of Judgment, dated Oct. 19, 2009 ("Pl. Entry Opp'n"), at 5; *see* Def.'s Reply to Pl. Entry Opp'n, dated Nov. 12, 2009.)

**For the reasons set forth below, Plaintiffs Motion for Class Certification is granted and Defendant's Motion for Entry of Judgment as to the March 12, 2009 Summary Judgment Order is denied.**

**2.** After the parties had fully briefed the Motion for Class Certification before Judge Leisure, the case was reassigned to this Court on September 2, 2010. (*See* Def.'s Mem. of Law in Opp'n to

## II. Legal Standard

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality and adequacy." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir.2008) (citing Fed.R.Civ.P. 23(a) (class action may lie "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class")).

"Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b)." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir.2010); *see In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023, 2002 WL 461513, at *3 (S.D.N.Y. Mar. 26, 2002). To certify a class under Rule 23(b)(3), the Court must "find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3); *see Seijas v. Republic of Arg.*, 606 F.3d 53, 57–58 (2d Cir.2010). "The matters pertinent to these findings include ... the class members' interest in individually controlling the prosecution ... [,] the extent and nature of any litigation concerning the controversy ... [,] the desirability ... of concentrating the litigation ... in th[is] ... forum ... [, and] the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3)(A)–(D).

A plaintiff "seeking to certify a class ... bear[s] the burden of establishing the[se] ... requirements." *LV v. N.Y.C. Dept. of Class Cert.*, dated July 30, 2010; Pl.'s Reply to Def. Class Opp'n I, dated Aug. 13, 2010 ("Pl. Class Reply I").)

*Educ.*, No. 03 Civ. 9917, 2005 WL 2298173, at *2 (S.D.N.Y. Sept. 20, 2005) (citing *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir.1999), *overruled on other grounds by In re IPO Sec. Litig.*, 471 F.3d 24, 40 (2d Cir.2006)).

■ "A court must conduct a 'rigorous analysis' to determine if th[e] requirements are met, resolving any factual disputes relevant to the Rule 23 analysis." *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y.2008) (citing *IPO*, 471 F.3d at 29). "In considering whether to certify a class, a court may not address the merits of the action except to the extent that the merits issue overlaps with a Rule 23 requirement." *Id.* (citing *IPO*, 471 F.3d at 41).

■ "[T]he court's power [under Fed. R.Civ.P. 54(b) ] to enter a final judgment before the entire case is concluded, in order to permit an aggrieved party to take an immediate appeal, [must] be exercised sparingly." *O'Bert v. Vargo*, 331 F.3d 29, 40–41 (2d Cir.2003) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438, 76 S.Ct. 895, 100 L.Ed. 1297 (1956) ("The . . . rule preserves the historic federal policy against piecemeal appeals[.]")).

### III. Analysis

#### Class Certification Under Fed.R.Civ.P. 23

The application to certify a class is granted.

#### Numerosity

Plaintiff argues that "numerosity is clearly met" in light of the "number of potential class members" and their geographic dispersion across "at least 43 different U.S. states and territories." (Pl. Class Mem. at 4.) Defendant does not appear to challenge numerosity.

■ Because "numerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995), and broad "geographic dispersion of class members" supports a finding of numerosity, *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993), Plaintiff has met his burden of establishing that "the class is so numerous that joinder of all members is impracticable," Fed.R.Civ.P. 23(a)(1); *see Koss v. Wackenhut Corp.*, No. 03 Civ. 7679, 2009 WL 928087, at *3–5 (S.D.N.Y. Mar. 30, 2009) (numerosity met for class of 99 employees spread "across seven New York counties").

#### Commonality

■ Plaintiff argues that "a common question of law and fact exists as to the class members being entitled to having overtime wages included in their unearned wage remedy." (Pl. Class Mem. at 5.) Defendant argues, among other things, that because it intends to assert "various" defenses against 26 of the class members, and because "overtime hours will have to be decided on an individualized basis," "[n]o cases are alike" and the "claims have no commonality with one another." (Def. Class Opp'n II at 8–9.)

■ Plaintiff has met his "minimal burden" as to commonality, *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y.2002), by showing that the class members' "grievances share a common question of law or of fact," *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir.2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (per curiam)), namely, whether the members are entitled under maritime law to overtime pay as part of their unearned wages. *See, e.g., Guenther v. Sedco, Inc.*, 866 F.Supp. 786, 788 (S.D.N.Y.1994) (class of 245 seamen certified in action for unpaid wages against ship owners, operators, and managers). In this context, "the possibility that potential defenses might apply differently to individual plaintiffs . . . is trumped by the commonality of the central claim." *Casale v. Kelly*, 257 F.R.D. 396, 411 (S.D.N.Y.2009) (internal quotation marks omitted). And, because commonality "does not mean that all issues must be identical as to each member," *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (internal quotation marks omitted), "the need for an individualized determination of damages suffered by each class member generally does not defeat" the requirement, 5 Moore's Federal Practice § 23.23[2]; *see Ansoumana v. Gristede's Operating Corp.*, 201

F.R.D. 81, 86 (S.D.N.Y.2001) (commonality found despite "differences ... concern[ing] the amount of damages to which any individual [class member] might be entitled").

### Typicality

■ Plaintiff argues that his "claims are typical of the claims of all class members" because "Plaintiff and the members of the proposed class were injured or became ill while working for Defendant and received maintenance and cure, inclusive of unearned wages, but were denied the overtime wages that they were, also, entitled to." (Pl. Class. Mem. at 7.) Defendant argues that some putative class members are not "similarly situated with [others] who belong to different unions [with different collective bargaining agreements] and who may not wish to be part of this class." (Def. Class Opp'n II at 5, 10.)

■ Padilla's (and Cupan's) claims are typical of the class because they "arise[ ] from the same course of events" and rest on "similar legal arguments," *Brown,* 609 F.3d at 475, *i.e.,* that "as a matter of law, overtime pay is factored into unearned wage calculations for purposes of an incapacitated seaman's entitlement to maintenance and cure under general maritime law," *Padilla,* 603 F.Supp.2d at 620. As Plaintiff correctly observes, Defendant "fails to produce any evidence that any union or its governing collective bargaining agreement would produce a different result concerning overtime unearned wages than was accorded to Plaintiff" (Pl. Class Reply I at 8), and "[t]he Court ... has rejected efforts by [d]efendants to defeat certification by raising the possibility of [such] hypothetical conflicts or antagonisms among class members." *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 513 (S.D.N.Y.1996); *In re Alstom SA Sec. Litig.,* 253 F.R.D. 266, 276 (S.D.N.Y. 2008) ("merely speculative" intra-class conflicts do not preclude typicality). "As with commonality, typicality is not defeated by 'minor variations in the fact patterns underlying individual claims,' as long as the wrong is alleged to have occurred in the same general fashion." *Charron v. Pinnacle Grp. N.Y. LLC,* 269 F.R.D. 221, 232 (S.D.N.Y.

2010) (quoting *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993) ).

### Adequacy of Representation

Plaintiff argues that adequacy is met because, among other reasons, Plaintiff's "counsel has shown that he is capable and qualified to proceed as counsel to the proposed class." (Pl. Class. Mem. at 8.) Defendant does not appear to contest the issue of adequacy.

■ Plaintiff's counsel, who has in the past acted as lead counsel on behalf of seamen seeking unearned wages, *see Reed v. Am. S.S. Co.,* 682 F.Supp. 333 (E.D.Mich. 1988), and who has ably advocated on behalf of Padilla in this action, "is qualified, experienced, and generally able to conduct the litigation," *Spagnola v. Chubb Corp.,* 264 F.R.D. 76, 95 (S.D.N.Y.2010). As to whether the "proposed class representatives have ... interests that are antagonistic to the proposed class members," *id.,* Defendant's "speculative suggestion of potential conflicts [among the class] is insufficient to defeat class certification," *Dziennik v. Sealift, Inc.,* No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007); *see In re Marsh ERISA Litig.,* 265 F.R.D. 128, 143 (S.D.N.Y. 2010) ("As many courts have observed, the issues of typicality and adequacy tend to merge because they serve as guideposts for determining whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal quotation marks and alterations omitted))).

### Predominance

■ Plaintiff argues that "Defendant's liability for overtime wages in the unearned [w]age **context is the central legal** facet in this litigation" and "predominates over any question affecting only individual members." (Pl. Class Mem. at 8.) Defendant argues, among other things, that "[e]ven if liability for unearned wages is conceded in some of the cases, conceded 'issues' cannot predomi-

nate over the myriad inquiries into the damages." (Def. Class Opp'n II at 8.)

Defendant appears to overstate the complexity of damages calculations—and ignores "law of the case"—when it asserts that "changes in the ship's schedule, needs, and budgetary requirements," as well as the "amount of overtime" earned by a class member's "replacement," will "require a string of individual trials making the class action useless." (Def. Class Opp'n II at 4 n. 2, 15.) In granting summary judgment for Plaintiff, Judge Leisure rejected the "replacement" measures of damages and focused, instead, on the injured seaman's "reasonabl[e] expect[ations]." *Padilla*, 603 F.Supp.2d at 629. Judge Leisure, observing that "the measure of damages upon which the factual computation is based is a question of law," found that "Padilla's average weekly amount of overtime . . . prior to his injury is the proper measure of damages." *Id.*; *see also DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 76 (2d Cir.1992) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks omitted)).

Although individualized determinations must be made as to "the amount of overtime [a given class member] performed prior to the onset of the injury," "the date of [the member's] discharge," and "the date [the member's] voyage ended," *Padilla*, 603 F.Supp.2d at 630, common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations, *see In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."))); *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 180–81 (S.D.N.Y.2005).

■ The fact that the action's central issues have already "been resolved on summary judgment does not remove [them] from the predominance calculus" because "resolved issues bear on the key question that [predominance] analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir.2006) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir.2000)); (*see* Def. Entry Mem. at 7 ("[T]here being no genuine issues of material fact, class certification may be more likely, as there may be 'questions of law or fact common to the class.'" (quoting Fed.R.Civ.P. 23(a)(2)).))

### Superiority

■ Plaintiff argues that "a class action is the superior method with which to proceed" because, among other reasons, "class members are dispersed all over the United States," the Court "is already familiar" with the case, and "individual suits may not be feasible" given that "the individual amount of potential recovery is relatively small" and that "[s]ome potential class members are current employees of Maersk." (Pl. Class Mem. at 8–10.) Defendant argues, among other things, that "many of the class members either are in litigation or are informally pursuing claims with Maersk," the "forum may be inconvenient to those crewmembers living in other parts of the United States," and "concentrat[ing] all of the trials in one forum will be judicially inconvenient when . . . other jurists [can] decide the cases." (Def. Class Opp'n II at 13.)

Plaintiff has demonstrated that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3); *see Dziennik*, 2007 WL 1580080, at *12 ("[T]hese common questions are best litigated in a single forum, given the number of seafarers and their geographic dispersion."); *Alcantara v. CNA Mgmt.*, 264 F.R.D. 61, 66 (S.D.N.Y. 2009) ("[I]t is desirable to concentrate the litigation in one forum, individual litigation costs would likely exceed any gains from the

overtime ... recovery, and [some] potential plaintiffs are current employees of Defendant[ ] and thus are not inclined to pursue individual claims."); *Nassau Cnty.*, 461 F.3d at 230 (because "this action already has progressed substantially," "concentrating the litigation in [this] forum simplifies and streamlines the litigation process"). In its many briefs, Defendant does not direct the Court to any currently pending litigation against Defendant on these issues. And, the principal authority Defendant cites for the proposition that a class action would be unmanageable recognizes explicitly that where, as here, "the fact of injury and damages breaks down in what may be characterized as virtually a mechanical task, capable of mathematical or formula calculation, the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability." *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir.1977) (en banc).

### Application for Entry of Judgment

■ Defendant argues that "Padilla should be awarded judgment and an appeal be allowed to the Second Circuit to determine what fact issues may have to be tried as a class." (Def. Class Opp'n II at 6.) Plaintiff argues that Defendant should not be permitted to "present[ ] ... the case—half baked—to the Second Circuit," particularly in light of its earlier agreement to litigate class certification after liability. (Pl. Entry Opp'n at 4.)

Defendant's (debatable) assertion that "a reversal could avoid much wasted effort in discovery, motions and trials" (Def. Entry Mem. at 6) falls far short of establishing that this is "the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir.2005) (internal quotation marks omitted); *see In re Citigroup Pension Plan ERISA Litig.*, No. 05 Civ. 5296, 2007 WL 1074912, at *3 (S.D.N.Y. Apr. 4, 2007) (threat of " 'needlessly' expended resources" "hardly constitute[s] the requisite, rare hardship[ ] required for final judgments under Rule 54(b)"); *Taco John's of Huron, Inc. v. Bix Produce Co.*, 569 F.3d 401, 402 (8th Cir.2009). The only potential "hardship or injustice" Defendant identifies—"delay in recovering a monetary award" (Def. Entry Mem. at 10)—falls entirely on Plaintiff, who vehemently opposes the motion. "A losing party's dismay alone (common and understandable as it is) is not proper grounds for an expedited appeal." *Cornwell v. Credit Suisse Grp.*, 270 F.R.D. 145, 147 (S.D.N.Y. 2010).

### IV. Conclusion and Order

For the reasons set forth above, Plaintiff's Motion for Class Certification [# 48] is granted and Defendant's Motion for Entry of Judgment [# 39] is denied.

The parties are directed to appear before the court for a status and settlement conference on Wednesday, November 10, 2010 at 10:00 a.m. in Courtroom 21B of the United States Courthouse, 500 Pearl Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**