WHITEHORN, et al., Plaintiffs,

v.

WOLFGANG'S STEAKHOUSE,
INC., et al., Defendants.

No. 09 Civ. 1148(LBS).

United States District Court,
S.D. New York.

July 20, 2011.

Michael D. Palmer, Daniel Maimon Kirschenbaum, Charles Edward Joseph, Joseph, Herzfeld, Hester, & Kirschenbaum, New York, NY, for Plaintiffs.

Elliott S. Martin, Elliott S. Martin, Esq., Brooklyn, NY, for Defendants.

### MEMORANDUM & ORDER

SAND, District Judge.

Before the Court is Plaintiffs Ronald Whitehorn and William Akroyd's Motion for Class Certification of their New York Labor Law ("NYLL") claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification on behalf of all nonexempt persons employed by Defendants at any New York location in any tipped position, including servers, bartenders, and barbacks, at any time since February 9, 2003. Plaintiff Akroyd also seeks to certify a subclass made up of servers for the NYLL claim that Defendants took unlawful deductions from servers' tips. Defendants object to certification on typicality grounds and ask the Court to decline to exercise supplemental jurisdiction over the NYLL claims. For the reasons stated herein, the Motion for Class Certification is granted, and Plaintiffs' counsel is appointed class counsel under Rule 23(g).

## I. Background

Defendants Wolfgang's Steakhouse, Inc., ZMF Restaurants, LLC, Wolf at Tribeca, Inc., Peter Zweiner, and Wolfgang Zweiner own and operate three Wolfgang's Steakhouse restaurants in the City of New York ("Wolfgang's Tribeca," "Wolfgang's Park," "Wolfgang's Third," and collectively "Wolfgang's Restaurants"). Plaintiffs Whitehorn and Akroyd are former tipped employees of Defendants. Whitehorn worked primarily as a bartender and occasionally as a server at Wolfgang's Tribeca from approximately April 2008 until January 2009. Whitehorn Decl. ¶¶ 2–3. Akroyd worked as a server at Wolfgang's Park from 2005 until 2007. Akroyd Decl. ¶¶ 2–3.

During the relevant period, servers at Wolfgang's Restaurants, and bartenders working as servers, were paid the minimum wage for New York food service workers, with tip-credit, plus tips. Bartenders and barbacks were paid $5.50 per hour plus tips. However, prior to the filing of this action, Defendants did not record the hours worked by tipped employees or the time of arrival and departure for employees working a split shift. Music Dep. 65:12–66:2; 67:19–68:2. Rather, Defendants paid employees for a set amount of hours depending on the shift worked. For example, servers working a lunch shift at Wolfgang's Tribeca were typically paid for three-and-a-half hours of work, and servers working a dinner shift were paid for five hours of work, irrespective of the number of hours an individual actually worked. Butt Dep. 40:14–42:11. Wolfgang's Park used the same system with slightly different shift length projections. Butt Dep. 40:14–42:13. Because Plaintiffs allege that they and other employees worked significantly more hours than those for which they were paid, their pay fell below minimum wage (the "minimum wage claim"). Plaintiffs also allege that they often worked more than 40 hours per week but were not paid overtime compensation (the "overtime claim"). Similarly, Plaintiffs allege that they and other tipped employees often worked more than ten hours in a workday but were not paid an additional hour's pay at the basic New York minimum hourly wage rate, as required by New York's "Spread of Hours" law, N.Y. Lab. Law § 196–d (the "spread of hours claim").

Plaintiffs also allege that all tipped employees were required to purchase a uniform to wear at work, which consisted of a white, button-down, collared shirt, black pants, black shoes, and a black bow tie. Defendants did not reimburse employees for the cost of the uniforms or cover the cost of required laundering, which Plaintiffs allege violates New York law (the "employee attire claim"). Finally, Plaintiff Akroyd alleges on behalf of himself and other servers that Defendants pooled servers' tips and permitted part-owners Zijo Music and Rex Feratovic and head waiters with management authority to participate in the tip pool, in violation of New York law (the "unlawful deduction claim").

On February 8, 2011, the Court conditionally certified the FLSA collective action and permitted Plaintiffs to send Court-approved notice to putative collective members. The

Court also directed Defendants to produce contact information and Social Security numbers for the putative members, and they did so by the end of March, 2011. Plaintiffs' counsel mailed notices on April 8, 2011. As of June 24, 2011, Plaintiffs identified three persons who have opted-in to the FLSA collective action, Whitehorn, Akroyd, and Marin Mesic.

## II. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(a), the district courts possess supplemental jurisdiction to hear state law claims that are so related to a federal claim before the court that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a court may decline to exercise supplemental jurisdiction over a claim if, among other things, "the claim raises a novel or complex issue of State law," or "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). Here, Plaintiffs bring both FLSA and NYLL claims for minimum wage and overtime violations. The remaining NYLL claims include the spread of hours, employee attire, and unlawful deductions claims. Each FLSA and NYLL claim is brought on behalf of "all non exempt persons employed by Defendants at any New York location in any tipped position," including bartenders, servers, and barbacks, except the unlawful deduction claim, which is brought on behalf of servers only. Second Am. Compl. ¶¶ 10, 15, 23.

■ Defendant argues that the NYLL claims predominate over the FLSA claims because they will involve substantially more claimants.[1] Although it is true that more class members will likely choose to remain in a class action under the NYLL than will opt-in to the FLSA collective action, "predomi-

nance" for the purposes of supplemental jurisdiction "refers to the type of claim, not the number of claimants." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 162 (S.D.N.Y. 2008). Defendants admit that the "overarching theoretical framework is identical" for determining how much each tipped employee would make for each shift. Mem. Opp'n Mot. 5–6. Thus, the factual overlap between the minimum wage, overtime, and spread of hours claims "is virtually total," and "it would ill serve the interests of convenience or judicial economy to relitigate in state court the defendants' pay practices." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. at 162–63 (internal quotation marks omitted). While the uniform- and tip-related claims may require discovery beyond what would be required if Plaintiffs had brought only federal claims, the Court cannot conclude that these claims "substantially predominate" over the federal claims.

■ Defendants also argue that the Court should decline jurisdiction because the tip distribution claim is a novel and complex issue of state law. New York law prohibits "any employer or his agent or an officer or agent of any corporation, or any other person" from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196–d. Defendants posit that New York courts have yet to determine whether this law bars part-owners with management authority, such as Feratovic and Music, from participating in a tip pool when they wait tables and are thus "simultaneously" principals and employees.[2] Mem. Opp'n Mot. 7. On the contrary, several courts have addressed the circumstances under which such persons can and cannot participate in a tip pool, and Defendant points to no reason

---

1. Defendants also argue that the duties and projected shift hours of the FLSA members differ from those of the potential class and thus "will require totally different proof to resolve their separate issues." Opp'n 5–6. This argument stems from the mistaken belief that the FLSA action only includes bartenders. To the extent that the duties and hours worked differ among the class and collective action members holding different positions at different locations, these differences go to commonality and typicality but do not demonstrate predominance.

2. Defendant Zwiener, who identified himself as "president" of Wolfgang's, testified that both Music and Feratovic are partners with ownership interest and managerial roles. Zwiener Dep. 28:6–14, 29:20–25, 32:19–22.

this Court cannot perform a similar analysis. *See, e.g., Chan v. Triple 8 Palace, Inc.,* No. 03 Civ. 6048(GEL), 2006 WL 851749, at \*16–17 (S.D.N.Y. Mar. 30, 2006) (finding "genuine issue of material fact as to whether [part-owners] fit the definition of employer established by New York and federal law" but holding that "the fact that they also performed some service duties would not immunize [defendant] from liability"); *Chu Chung v. New Silver Palace Rest.,* 246 F.Supp.2d 220, 229–30 (S.D.N.Y.2002) (finding New York law "clearly prohibits part-owner employees who wield such broad managerial authority . . . from sharing tips"); *Ayres v. 127 Rest. Corp.,* 12 F.Supp.2d 305, 308 (S.D.N.Y.1998) (holding employee could not receive any share of tips once he became general manager, but there was "a triable issue of fact as to whether [employee] was an 'employer or agent' prior to [his promotion] or whether he was merely a senior floor captain with more limited supervisory responsibilities during this period"). Because this issue, which applies solely to the subclass, is a relatively minor aspect of the larger state claim and has been previously tackled by New York and federal courts, the Court will not decline jurisdiction on this ground.

■ Finally, Defendant argues that the Court should defer ruling on the certification until it determines whether the FLSA claims will proceed. Rule 23 directs the court to determine whether to certify a class action at "an early practicable time after a person sues or is sued as a class representative." . Fed. R.Civ.P. 23(c)(1)(A). The substantial delay likely to occur should the Court defer ruling on this issue counsels against deferral. This action has been pending for over two years, and much of the delay is attributable to Defendants' refusal to identify prospective members of the collective action and inaccuracies in the records they provided. Palmer Decl. ¶¶ 8–12 (June 24, 2011). As of the date of this Order, Defendants have not filed a motion to decertify the FLSA collective action, and it is not clear that they will have grounds to do so. Even if the collective

action were decertified, the Court would retain jurisdiction over Whitehorn's individual FLSA claim. Furthermore, significant discovery related to both federal and state claims has already been completed.

Given the overlap of issues, the length of the pendency of this action, and the extent of discovery already completed, "the values of judicial economy, convenience, fairness, and comity" dictate that Plaintiffs' federal and state claims be heard in one action, rather than forcing the parties to litigate parallel claims in state court. *Klein & Co. Futures, Inc. v. Bd. of Trade,* 464 F.3d 255, 262 (2d Cir.2006) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

## III. Rule 23 Certification Requirements

■ "[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met." *In re Initial Public Offerings Sec. Litig.,* 471 F.3d 24, 41 (2d Cir.2006). In doing so, the Court must resolve "factual disputes relevant to each Rule 23 requirement," but should "not assess any aspect of the merits unrelated to a Rule 23 requirement." [3] *Id.* Rule 23(a) contains "four prerequisites" for class certification: "numerosity, commonality, typicality, and adequacy of representation." *Id.* at 32. Because Plaintiffs seek to certify a Rule 23(b)(3) class, they must also meet the two additional requirements of "predominance, i.e., law or fact questions common to the class predominate over questions affecting individual members, and superiority, i.e., class action is superior to other methods." *Id.* Defendants challenge only the typicality prong.

### a. Numerosity

■ Under the first prong of Rule 23(a), a plaintiff must establish that the proposed class is "so numerous that joinder of each member is impracticable." Fed.R.Civ.P. 23(a). Defendants produced the names and contact information of 99 current and former employees, at least 71 of whom were identi-

---

**3.** Because Defendants' assertion that the employee attire claims fail on the merits is unrelated to the determination of any of Rule 23's requirements, it will not be considered here.

fied as servers who indisputably fall within the proposed class of tipped employees. Palmer Decl. ¶ 18 (Dec. 2, 2010). Because numerosity is generally presumed when a class is comprised of 40 or more members, *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995), Plaintiffs satisfy numerosity.

### b. Commonality

■■■■ A plaintiff may meet his burden as to commonality by showing that the class members' "grievances share a common question of law or of fact." *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir.2001) (quoting *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (per curiam)). Plaintiffs identify more than a dozen questions common to the primary class, including the factual determination of Defendant's pay practices, which Defendants acknowledge were virtually identical for all tipped employees; whether these practices satisfied New York minimum wage, spread of hours, and overtime laws; Defendants' practices with respect to employee attire; and whether Defendants were required to reimburse Plaintiffs for uniform purchase and laundering costs. As to the sub-class, members share the common determination of Defendants' practices with respect to the handling and distribution of gratuities received by subclass members, and whether Music, Feratovic, and the head waiters were legally permitted to receive a portion of the gratuity received by subclass members.

■■■■ Defendants do not dispute that the framework for determining how much each tipped employee would make for each shift is identical. They argue only that the job duties and thus the projected shift hours differ among the different types of tipped employees at the three locations. This argument boils down to a concern that damages among class members will differ. "[B]ecause commonality does not mean that all issues must be identical as to each member, the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement." *Padilla v. Maersk Line, Ltd.,* 271 F.R.D. 444, 448 (S.D.N.Y.2010) (internal quotations and citations omitted). Plaintiffs satisfy the requirement of commonality.

### c. Typicality

■■■■ Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro–North,* 267 F.3d at 155 (quoting *Marisol A. v. Giuliani,* 126 F.3d at 376). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993); *Bolanos v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("As long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." (quotation marks and citation omitted)).

■■■■ Defendants argue that Plaintiff Whitehorn is atypical because he worked as a bartender and thus, unlike servers, staggered his shift with a co-bartender. The record is clear that Whitehorn worked as both a bartender and a server during the relevant period, and both bartenders and servers are included in the proposed class. In any case, Defendants do not deny that all tipped employees were paid by shift and were required to wear specific attire for which they were not reimbursed.

Defendants argue that Akroyd is atypical because he testifies that he stayed late 80–90% of the time to perform additional tasks. "[D]ifferences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled," but do not defeat typicality for Rule 23 purposes. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 86 (S.D.N.Y.2001); *Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 371 (S.D.N.Y.2007) (typicali-

ty met despite fact that named plaintiffs performed "almost exclusively" one type of work and "workers in other departments performed different tasks on a different schedule").

The differences cited by the Defendants do not "undermine the conclusion that each putative class member's claims arise from the same course of events and each class member will make a similar legal argument to demonstrate liability." *Ansoumana,* 201 F.R.D. at 87. Accordingly, the named representatives' claims are sufficiently typical of those of the proposed class as a whole.

### d. Adequacy

■ Rule 23(a)(4) requires that class representatives "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). As already established, Plaintiffs seek recovery stemming from the same unlawful conduct allegedly perpetrated by Defendants. There is no dispute that "the proposed class representative[s] . . . have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir.2006). Adequacy of the representatives is established.

### e. Predominance

■ To satisfy the requirement of predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *(In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir.2001) (citation and internal quotations omitted)). Plaintiffs argue that the question of whether Defendants' policies resulted in class members not being properly compensated for all of their hours worked predominate for both the class and subclass. Like commonality, predominance is not defeated by the fact that potential plaintiffs worked at different restaurant locations and in different categories of tipped positions where, as here, Defendants admit that the pay policy was identical. Although individualized determinations must be made as to the amount of

wages, overtime, and spread of hours pay each Plaintiff is due based on the hours projected for their shift and the number of hours worked, "common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations." *Padilla v. Maersk Line,* 271 F.R.D. at 450; *Ansoumana,* 201 F.R.D. at 86 ("individualized questions concerning the number of hours worked, overtime, etc., will not predominate over the larger question of the case").

### f. Superiority

■ The final question to be addressed under Rule 23(b) is whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant. *See, e.g., Trinidad v. Breakaway Courier Sys., Inc.,* No. 05 Civ. 4116(RWS), 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) (finding class action superior where average claim was $560 and class members currently worked for defendant); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. at 164 (holding FLSA and NYLL class claims should be tried together "because it allows for a more cost-efficient and fair litigation of common disputes").

### g. Appointment of Class Counsel

■ Rule 23(g) directs that the Court consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R.Civ.P. 23(g)(1)(A). There is no dispute that Plaintiffs' counsel are qualified and experienced in class action law and wage and employment litigation in New York. Palmer

Decl. ¶¶ 19–21 (Dec. 2, 2010). Counsel are hereby appointed class counsel.

## IV. Conclusion

For the reasons set forth herein, the Motion to Certify the Class is granted. Charles Edward Joseph, Daniel Maimon Kirschenbaum, and Michael Douglas Palmer of Joseph, Herzfeld, Hester, & Kirschenbaum are appointed class counsel.

SO ORDERED.